USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/13/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
JULIAN TAMAYO,
:     **OPINION AND ORDER**
Petitioner,
:     **05 Civ. 9001 (SAS)**
- against -
:     **99 CR 1113 (SAS)**
UNITED STATES OF AMERICA
:
Respondent.
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.     INTRODUCTION

Julian Tamayo, proceeding pro se, moves to vacate, set aside, or

correct his sentence under section 2255 of title 28 of the United States Code

("section 2255"). For the reasons stated below, his motion is denied.

# II.     BACKGROUND

## A.     The Offense Conduct

On December 28, 1999, a grand jury sitting in the Southern District of

New York returned a superseding indictment (the "Indictment") against Tamayo

and a number of his alleged co-conspirators.[1] The Indictment charged that from

---

[1]     The Indictment superseded an indictment filed on October 26, 1999.

1

1995 to 1999, Tamayo was a member of a criminal organization led by Alex Restrepo (the "Restrepo Organization").[2] The Restrepo Organization was responsible for many armed robberies throughout the New York City metropolitan area.[3]

Tamayo was charged with the following crimes: (1) racketeering in violation of section 1962(c) of title 18 of the United States Code (Count One);[4] (2) conspiracy to engage in racketeering activity in violation of section 1962(d) of title 18 of the United States Code (Count Two);[5] (3) the use and carrying of a firearm during a conspiracy to rob and the robbery of a Bravo Supermarket employee in violation of section 921(c) of title 18 of the United States Code (Count Three);[6] (4) conspiracy to commit robbery of jewelers at gunpoint at the Hilton Hotel in Midtown Manhattan in violation of section 1951 of title 18 of the United States Code (Count Six);[7] (5) robbery of jewelers at gunpoint at the Hilton

---

[2]   *See* Indictment ¶¶ 1-4.

[3]   *See id.*

[4]   *See id.* ¶¶ 1-29.

[5]   *See id.* ¶¶ 30-31.

[6]   *See id.* ¶ 32.

[7]   *See id.* ¶ 35.

Hotel in Midtown Manhattan in violation of section 1951 of title 18 of the United States Code (Count Seven);[8] (6) attempted murder, and aiding and abetting attempted murder in violation of section 1959(a)(5) of title 18 of the United States Code (Count Eight);[9] and (7) the use and carrying of a firearm in relation to the conspiracy to rob jewelers, robbery, and attempted murder in violation of section 924(c) of title 18 of the United States Code (Count Nine).[10]

On February 8, 2002, Tamayo pled guilty to racketeering as charged in Count One of the Indictment. On November 4, 2002, this Court sentenced Tamayo to twenty years in prison to be followed by three years of supervised release.

## B.     Procedural History

Tamayo's section 2255 motion, dated September 29, 2005, was received by this Court's Pro Se Office on October 12, 2005, and was filed by the Clerk of the Court on October 24, 2005. Acting *sua sponte*, this Court dismissed Tamayo's motion as untimely in an Order dated January 20, 2006. Tamayo appealed that Order to the Second Circuit. On August 3, 2007, the Second Circuit

---

[8]     *See id.* ¶ 36.

[9]     *See id.* ¶¶ 37-39.

[10]     *See id.* ¶ 40.

remanded the case and directed this Court to consider whether equitable tolling, or any other factor, might affect the timeliness of Tamayo's section 2255 motion.

The Second Circuit also directed this Court to reconcile discrepancies regarding petitioner's date of conviction and whether petitioner appealed his conviction. With regard to the date of conviction, this Court's electronic case filing records indicate that a Judgment and Commitment form ("J&C") was filed on November 6, 2002. The J&C indicates that sentence was imposed on November 4, 2002. Petitioner now claims that the date of the judgment of conviction is December 4, 2002, rather than November 4, 2002. This self-serving allegation is simply incorrect.

This Court's electronic records indicate that a Notice of Appeal was filed on November 15, 2002, within ten days of the filing of the J&C. Tamayo's file was then transmitted to the Second Circuit. On August 6, 2003, the Second Circuit dismissed his appeal because he failed to comply with the requirements set forth in the scheduling order entered by the Second Circuit in accordance with the Revised Second Circuit Plan to Expedite the Processing of Criminal Appeals. Thus, although Tamayo filed a Notice of Appeal, he never perfected that appeal. These circumstances best explain why Tamayo now claims he did not appeal his conviction.

The Mandate dismissing Tamayo's appeal was certified on August 6, 2003, and docketed on August 21, 2003. Giving Tamayo the benefit of the latter date, his conviction became final ninety days later, on November 19, 2003.[11] Under the one-year limitations period contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"),[12] Tamayo had until November 19, 2004 to file a habeas petition. His petition, however, is dated September 29, 2005, more than ten months beyond the applicable one-year period.

In an Order dated August 21, 2007, this Court invited Tamayo to show cause as to why the statute of limitations should not bar his section 2255 motion and, more specifically, whether he is entitled to equitable tolling for any time between the date his conviction became final and the filing of his section 2255 motion. On September 18, 2007, Tamayo submitted an affirmation in response to that Order. The Government submitted a letter in opposition dated October 15, 2007.

**B.      Tamayo's Equitable Tolling Argument**

Tamayo was sentenced on November 4, 2002. On December 19,

---

[11]      *See* Sup. Ct. R. 13.1 (stating that a writ of certiorari is timely if filed within ninety days after entry of judgment).

[12]      Pub. L. No. 104-132, 110 Stat. 1214 (1996).

2002, he was returned to state prison to complete a previously imposed state sentence. From December 19, 2002 until January 3, 2005, he served time in various state prisons.[13] On January 3, 2005, he was returned to federal custody to begin serving his federal sentence.

In his Affirmation, Tamayo asserts that he is entitled to equitable tolling from the time he was returned to state prison in December 2002 until the time he arrived in federal custody on January 3, 2005 for the following reasons: (1) his inability to speak or understand English; (2) the alleged failure by the Metropolitan Correctional Center ("MCC") to send his "legal papers" to him in state prison; (3) his belief that his direct appeal was still pending; (4) his transfers between different facilities while in state custody; and (5) his lack of a paralegal to

---

[13]    Tamayo's state prison transfer history follows: 12/19/02 transfer from Sing Sing Correctional Facility ("Sing Sing") to Downstate Correctional Facility ("Downstate"), 12/23/02 transfer from Downstate to Sing Sing, 1/28/03 transfer from Sing Sing to Downstate, 1/29/03 transfer from Downstate to Clinton Correctional Facility Annex ("Clinton Annex"), 2/21/03 transfer from Clinton Annex to Clinton Correctional Facility General ("Clinton General"), 2/27/03 transfer from Clinton General to Upstate Correctional Facility ("Upstate"), 5/27/03 transfer from Upstate to Downstate, 6/5/03 transfer from Downstate to Great Meadow Correctional Facility ("Great Meadow"), 5/3/04 transfer from Great Meadow to Bare Hill Correctional Facility ("Bare Hill"), 6/25/04 transfer from Bare Hill to Franklin Correctional Facility ("Franklin"), 6/26/04 transfer from Franklin to Bare Hill, 9/23/04 transfer from Bare Hill to Clinton General, 12/31/04 transfer from Clinton General to Great Meadow, 1/3/05 transfer from Great Meadow to federal custody. See 10/15/07 Respondent's Letter in Response to Petitioner's Affirmation, Ex. A.

paralegal to help him prepare his section 2255 motion while in state prison.[14]

Tamayo argues that for each of these reasons, separately and collectively, he was

prevented from filing his section 2255 motion before he was returned to federal

custody.[15] Tamayo argues that the statute of limitations began running on the date

he arrived in federal custody, January 3, 2005, and that he had one year thereafter

in which to file a timely section 2255 motion.[16]

## III.   APPLICABLE LAW

### A.   Standard for Equitable Tolling

The AEDPA established a one-year limitation period for motions

under section 2255. For equitable tolling to apply, a petitioner must show that

"extraordinary circumstances prevented him from filing his petition on time."[17]

"'Transfers between prison facilities, solitary confinement, lockdowns, restricted

access to the law library and an inability to secure court documents do not qualify

---

[14]     *See* 9/18/07 Affirmation of Petitioner in Response to Court's Order to
Show Cause ("Tamayo Aff."), at 7-9, 11-14.

[15]     *See id.* at 14

[16]     *See id.*

[17]     *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).

as extraordinary circumstances.'"[18] Also, pro se status and lack of expertise in the

legal system do not constitute extraordinary circumstances that warrant equitable

tolling.[19]

However, a prisoner's lack of proficiency in English can, in certain

circumstances, warrant tolling of the limitations period, depending on "how severe

an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitation

period."[20] Also, the Second Circuit has held that the intentional confiscation of a

---

[18] *Muller v. Greiner*, No. 03 Civ. 1844, 2004 WL 97687, at *3 (S.D.N.Y
Jan. 20, 2004) (quoting *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002)).
*Accord Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000)
("While solitary confinement does present an obstacle to filing a timely habeas
petition, it does not qualify as an extraordinary circumstance."), *aff'd*, 255 F.3d 65
(2d Cir. 2001); *Montalvo v. Strack*, No. 99 Civ. 5082, 2000 WL 718439, at *2
(S.D.N.Y. June 5, 2000) (holding that transfers between prison facilities do not
merit equitable tolling). *Cf. Kloss v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)
(transferring inmates among facilities falls within the discretion of the state and
does not violate the Constitution or federal law).

[19] *See, e.g., Smith*, 208 F.3d at 18 (holding that pro se status does not
warrant equitable tolling); *Cross v. McGinnis*, No. 05 Civ. 504, 2006 WL
1788955, at *6 (S.D.N.Y. June 28, 2006) ("[I]t is not an extraordinary
circumstance when a prisoner does not receive legal assistance from prison law
library clerks. . . ."); *Fennell v. Artuz*, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998)
(holding that a lack of education and unfamiliarity with legal research do not
warrant equitable tolling) .

[20] *Diaz v. Kelly*, — F.3d —, 2008 WL 1998846 (2d Cir. Jan. 25, 2008)
(holding that the diligence requirement of equitable tolling imposes on the
prisoner a substantial obligation to make all reasonable efforts to obtain assistance
to mitigate his language deficiency).

prisoner's habeas petition and related legal papers by a corrections officer is "extraordinary" as a matter of law.[21] Accordingly, if the confiscation of papers prevents a petitioner from filing his section 2255 motion before the limitations period expires, "the tolling period must be sufficient to permit the filing of a petition on or before the earliest date after the act of confiscation by which that petitioner, acting with reasonable diligence, should have filed his or her petition."[22]

In addition to the presence of extraordinary circumstances, a petitioner must establish that he diligently attempted to file his petition in a timely manner during the time he seeks to have tolled.[23] The petitioner must demonstrate a "causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on

---

[21]    *See Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000).

[22]    *Id.* at 134.

[23]    *See Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

time notwithstanding the extraordinary circumstances."[24]

Determining whether equitable tolling is warranted is a "fact-specific" inquiry.[25] Because it is a fact-specific, discretionary doctrine, "'equitable tolling does not lend itself to bright-line rules.'"[26] Petitioner has the burden of proving that equitable tolling is appropriate.[27]

## IV. DISCUSSION

### A. Prison Transfers Do Not Constitute Extraordinary Circumstances

Tamayo suggests that for a short time, he was incarcerated in one particular state prison ("Clinton Annex") where he claims he was denied the resources to properly research federal law. He also argues that he was prevented from preparing his section 2255 motion until the time he was incarcerated in a federal correctional institution because the law libraries in state facilities were inadequate. These claims do not warrant equitable tolling. Tamayo's arguments ignore the fact that he resided in different state prisons and was often housed in

---

[24]    *Id.*

[25]    *Wims v. United States,* 225 F.3d 186, 190 (2d Cir. 2000).

[26]    *Valverde,* 224 F.3d at 134 (quoting *Fisher v. Johnson,* 174 F.3d 710, 713 (5th Cir. 1999)).

[27]    *See Smith,* 208 F.3d at 17.

general population with full access to available law libraries. He does not cite any specific deficiencies concerning the prison library facilities that support his claim.

Even if it were true that the prisons' facilities presented an obstacle to timely filing, Tamayo did not act with the diligence necessary to hold in favor of equitable tolling. Tamayo's inaction continued for at least eight months after he was transferred from state to federal custody. Therefore, Tamayo's claim that his filing was delayed because he was in state custody, and transferred within the New York State correctional system, does not warrant tolling of the statute of limitations.

## B. Tamayo's Belief That His Direct Appeal Was Still Pending Does Not Toll the Statute of Limitations

Tamayo alleges that he is entitled to equitable tolling because he was unaware of the disposition of his direct appeal. Tamayo's appeal was dismissed on August 6, 2003. The fact that Tamayo claimed he had no knowledge of the dismissal of his appeal is insufficient to excuse his duty to exercise reasonable diligence.[28]

---

[28] Courts have found that a petitioner's lack of notice of the outcome of an appeal does not automatically entitle him to equitable tolling. A petitioner must still show that he acted in a diligent manner and must show that there was an impediment preventing him from learning of the disposition of his appeal. *See Plowden v. Romine*, 78 F. Supp. 2d 115, 119, 120 (E.D.N.Y. 1999) ("[L]ack of notice of the Court of Appeals's decision[s], even if true, do[es] not establish his

Tamayo does not allege he was denied access to his counsel or that he

even tried to contact his counsel. But Tamayo does assert that he inquired about

the status of his appeal and did not receive a response from the Court of Appeals.[29]

However, the court docket sheet does not reflect that any such inquiries were ever

received by the Court of Appeals. In sum, the fact that Tamayo filed his section

2255 motion more than two years after his appeal was dismissed does not show

the level of reasonable diligence required to invoke the equitable tolling doctrine.

C.      **Tamayo's Inability to Speak and Understand English and His Lack of Access to Legal Help Do Not Warrant Equitable Tolling**

Tamayo claims that he does not speak or understand English. He also

alleges that, as a result, he had to rely on prison paralegals to help him with his

section 2255 filing, which were not available to him in state prison. Tamayo has

not alleged, however, that he made efforts sufficient to satisfy the diligence

---

entitlement to equitable tolling. . . . There is no limiting principle to [petitioner's] argument that simple ignorance – absent any showing of diligence on his part or allegations of impediments to his staying informed about his case – should provide a basis for equitable tolling; '[t]o hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.'" (quoting *Balagula v. United States*, 73 F. Supp. 2d 287, 290 (E.D.N.Y. 1999))); *See also Mandarino v. United States*, No. 98 Civ. 590, 91 CR 868, 1998 WL 729703, at *2 (S.D.N.Y. Oct. 16, 1998) (dismissing a habeas petition as untimely where the defendant should have discovered that his petition for certiorari had been denied by consulting case reporters available in the prison library).

[29]     *See* Tamayo Aff. at 8-9.

requirement. He only claims that there were no prison personnel who could translate for him during the applicable limitations period. There is no allegation of any effort to contact anyone outside the prison system who might help him understand the legal requirements for filing a habeas corpus petition.[30] Because Tamayo did not act with the diligence required for equitable tolling, his allegations of lack of legal education and inability to speak and understand English, even if true, do not constitute extraordinary circumstances.[31] As a result, Tamayo is not entitled to equitable tolling of the statute of limitations.

**D.     The Alleged Loss of Tamayo's "Legal Papers" Does Not Warrant Equitable Tolling**

Tamayo alleges that the MCC misplaced his legal papers in December 2002.[32] He does not specify which legal papers were missing, which of these papers were necessary to the filing of his section 2255 motion, or whether he ever

---

[30]     For example, Tamayo does not mention whether any of his family members could have translated on his behalf, or if any were asked to do so.

[31]     To hold otherwise would give carte blanche to every non-English speaking defendant to determine his or her own statute of limitations. Furthermore, Tamayo eventually overcame his language obstacle as evidenced by the instant petition. Thus, Tamayo's lack of proficiency in English was not an insurmountable impediment and he should have made an effort to overcome it earlier than he did.

[32]     *See* Tamayo Aff. at 6.

received duplicate copies of these papers from any other source.[33]

Tamayo's section 2255 petition is dated September 29, 2005, which means that he waited over eight months from the time he was transferred into federal custody and nearly three years from the time his papers were allegedly confiscated before filing his motion. Tamayo presents no explanation for the lengthy delay after the alleged confiscation, nor does he state whether he now has these papers or whether these papers were actually needed to prepare the motion he filed in 2005.[34] Tamayo does not assert that he attempted to contact his attorney or this Court to obtain copies. In short, with regard to this alleged confiscation, Tamayo did not act with the reasonable diligence required for equitable tolling.[35]

---

[33] *See Cross*, 2006 WL 1788955, at *5 (dismissing petition as untimely where petitioner failed to show how missing legal documents would have helped him prepare his filing or that he made reasonable efforts to file his petition without the missing papers).

[34] *See United States v. Rodriguez*, 438 F. Supp. 2d 449, 453-54 (S.D.N.Y. 2006) (finding no basis for equitable tolling where there was no causal link between loss of legal paperwork and petitioner's failure to file a timely petition).

[35] Assuming arguendo, that the MCC did actually misplace or confiscate relevant legal papers, Tamayo could have filed a "bare bones" petition within the limitations period and sought leave to amend thereafter.

## V.  CONCLUSION

For the foregoing reasons, Tamayo's petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[36]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[37]  Petitioner has made no such showing.  Accordingly, I decline to grant a certificate of appealability.  The Clerk of the Court is directed to close this motion and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           February 13, 2008

---

[36]     28 U.S.C. § 2253(c)(2).

[37]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *Accord Middleton v. Attorneys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

15

## - Appearances -

**Petitioner (Pro Se):**

Julian Tamayo
# 50494-054
FCI Ray Brook
Box 9003
Ray Brook, NY 12977

**For Respondent:**

Helen V. Cantwell
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2193